**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LARRY YOUNG,

      Plaintiff,

                                    Case No. 22-11968

v.

                                      Hon. Denise Page Hood

ST. CLAIR SHORES POLICE
DEPARTMENT and CLINTON RICE,

      Defendants.

_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT (#21),**
**DISMISSING AND CLOSING CASE**

**I.     BACKGROUND**

On August 22, 2022, Plaintiff Larry Young filed the instant action against Defendants St. Clair Shores Police Department and Clinton Rice alleging: 42 U.S.C. § 1983 Violation of Fourth and Fourteenth Amendments Unlawful Search and Seizure  (Count I); *Monell* Claim against the City of Flint (sic) and the Flint (sic) Police Department (Count II); 42 U.S.C. § 1983 Violation of the Fourteenth Amendment Equal Protection (Count III); Negligent Infliction of Emotional Distress (Count IV); and, Intentional Infliction of Emotional Distress (Count V). (Complaint, ECF No. 1)

On August 30, 2019, Young, a black male, spent the day painting his house

and drinking vodka.  (Young Dep. at 30, 41-42, 44-46 ECF No. 21, PageID.153, .156-.157)  He stopped drinking about 2:00 a.m. on August 31 and went to sleep around 2:45 a.m.  (*Id*. at 45-46, PageID.157) Around 11:30 a.m. on August 31, Young  went fishing and was driving through St. Clair Shores looking for a pier. (*Id*. at 35, 50-52, PageID.154, .158)  He stopped his car in the right lane of 10 Mile Road, used his cell phone and googled piers in St. Clair Shores.  (*Id*. at 52-53, PageID.158-.159)  Rice, a St. Clair Shores Police Officer, was patrolling 10 Mile Road when he observed Young's car stopped in the right westbound through lane of 10 Mile Road.  (Rice Aff. at 1-2, ECF No. 21, PageID.168-.169; Dash Cam Video at 11:35:09) Rice activated his lights and pulled behind Young's car, exited the patrol vehicle and approached Young's driver's side window.  (Rice Aff. at 2, ECF No. 21, PageID.169; Young Dep. at 54-57, ECF No. 21, PageID.159) Rice asked Young if something was wrong, and why he was stopped in the through-lane of the road.  (Rice Aff. at 2, ECF No. 21, PageID.169)  Young responded that he pulled over to use his phone to look for a fishing spot. *(Id*.)  Rice noticed Young's speech was slow, deliberate, and slurred.  *(Id.)*

Young was told by Rice that he could not stop in a through-lane of travel and asked for Young's driver's license, registration, and proof of insurance.  *(Id*.) Young provided the documents to Rice.  Rice thereafter performed a LEIN check

which indicated Young had three prior operating while intoxicated arrests.  *(Id*.;

Young Dep. at 6-7, ECF No. 21, PageID.147)  Sobriety tests were performed.

Young initially refused the Breathalyzer test, then agreed to the test.  (Rice Aff. at

3-4, ECF No. 21, PageID.170-.171)  The test revealed a blood alcohol content of

0.186 percent, more than twice the legal limit.  (*Id*. at 4, PageID.171) Young was

arrested for Operating While Intoxicated, handcuffed, and placed in the back of

Rice's patrol vehicle. *(Id.)*  The subsequent search of Young's vehicle revealed the

red cup contained alcohol. (*Id*.; Dash Cam Video at 11:56:10-11:56:25, 11:57:45-

11:58:15)  Young was transported to the St. Clair Shores Police Department. (Rice

Aff. at 4, ECF No. 21, PageID.171; Dash Cam Video at 12:01:00-12:06:21) Two

more Breathalyzer tests were administered at the station. (Rice Aff. at 4, ECF No.

21, PageID.171; Young Dep. at 65-67, ECF No. 21, PageID.162; Report, ECF No.

21, PageID.228) The first, at 12:28 P.M., came back at 0.16 percent, and the

second, at 12:31 P.M., came back at 0.17 percent. (*Id*.)

The Michigan State Police ("MSP") is statutorily responsible for the

purchase, certification, and maintenance of the Breathalyzer machines used by law

enforcement agencies in the State of Michigan. MCL 257.625h; Mich. Admin.

Code R 257.991-996, 325.2651-2658. (1.10.20 MSP Memo, ECF No. 21,

PageID.250) From 2018 to 2020, MSP contracted out the service work on the

machines to a third-party vendor, Intoximeters. (1.13.20 MSP Stmt., ECF No. 21, PageID.232; 1.16.20 MSP Release, ECF No. 21, PageID.236)

In January of 2020, MSP discovered that technicians at Intoximeters were fabricating paperwork related to required tests on certain Breathalyzer machines, and that discrepancies had been identified at the Alpena County Sheriff's Department, Beverly Hills Police Department, Detroit Detention Center, Montcalm County Sheriff's Department, Niles Police Department, Pittsfield Township Police Department, Tecumseh Police Department, and Van Buren County Sheriff's Department. (1.16.20 MSP Release, ECF No. 21, PageID.237; 1.13.20 MSP Stmt., ECF No. 21, PageID.233) On January 10, 2020, MSP notified police and prosecutors of these performance-related issues, and advised that, effective immediately, "fully certified and MSP personnel would ensure that all Datamaster DMTs are certified, calibrated, and serviced according to state law and industry standard." (1.16.20 MSP Release, ECF No. 21, PageID.237)

On January 13, 2020, MSP removed all 203 Datamaster DMT Breathalyzer instruments in the State of Michigan from service until they could be inspected and verified by MSP personnel to ensure that they were properly calibrated. (1.16.20 MSP Release, ECF No. 21, PageID.237) In the interim, MSP recommended police agencies utilize blood draws rather than breath tests to establish evidence of drunk

driving. (*Id.*)

This matter is now before the Court on Defendants' Motion for Summary Judgment.  A response and reply brief have been filed.

## II.    ANALYSIS

### A.    Standard of Review

Rule 56(a) of the Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).   The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).   Summary judgment must be entered against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial.  In such a situation, there can be

"no genuine issue as to any material fact," since a complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial.  *Celotex Corp.*, 477 U.S. at 322-23.  A court must look

to the substantive law to identify which facts are material.  *Anderson*, 477 U.S. at

248.

      **B.**     **Count II, Municipal Liability**

A municipality cannot be held liable under § 1983 on the theory of

*respondeat superior.  Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691 (1978).

A municipality is only responsible "when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly

be said to represent official policy, inflicts the injury."  *Id.* at 694.  There must be

an "affirmative link between the policy and the particular constitutional violation

alleged" for the municipality to be held responsible.  *Oklahoma City v. Tuttle,* 471

U.S. 808, 823 (1985).  Proof of one incident of unconstitutional activity is

insufficient to impose municipal liability.  *Id.* at 823-24.  The evidence must show

an unconstitutional policy or practice which was the "moving force" behind the

officers' actions.  *Bellamy,* 729 F.2d at 421.  The evidence can be shown by a

written policy, and, if not, by circumstantial evidence. *Monell,* 436 U.S. at 692-94.

The plaintiff has the burden of proof to establish the unconstitutional policy and

link it with both the municipality and the injuries at issue. *Coogan v. Wixom,* 820

F.2d 170, 176 (6th Cir. 1987).

Young's Complaint alleges a municipal liability against the St. Clair Shores

Police Department only. It is well settled that municipal agencies of cities in the

State of Michigan are not legally distinct entities amenable to suit under section

1983. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) ("Van Buren

Township Police Department is subsumed within Van Buren Township as a

municipal entity to be sued under § 1983, and thus the Police Department was

improperly included as a separate defendant in [the plaintiff's] suit."). The St.

Clair Shores Police Department is not a municipal entity which can be sued under

§ 1983 and must be dismissed.

Young in his brief asserts that if the police department was incorrectly

named, he "must" be afforded the ability to amend his pleadings. Rule 15(a)

provides that a party may amend its pleading once as a matter of course within 21

days after a responsive pleading is served. Fed. R. Civ. P. 15(a)(1). However,

Young has not filed a Motion to Amend the Complaint and the matter is now in the

summary judgment motion stage, where discovery has been completed. Even if he

filed such a motion, Young has failed to show that a municipality, perhaps the City of St. Clair Shores, is liable.

Rule 15(a)(2) further provides that a party may amend its pleading on leave of court.  Leave shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  A district court may deny leave to amend in cases of undue delay, undue prejudice to the opposing party, repeated failure to cure deficiencies by amendment previously allowed or futility.  *Foman v. Davis,* 371 U.S. 178, 184 (1962).  If a complaint cannot withstand a motion to dismiss under Rule 12(b)(6), the motion to amend should be denied as futile.  *Rose v. Hartford Underwriters Ins. Co.,* 203 F.3d 417, 420 (6th Cir. 2000).

Reviewing the Complaint, and the facts submitted with the briefs, there are no facts alleged in the Complaint, nor does Young point to any facts revealed in discovery that the City of St. Clair Shores had a specific custom or policy as to how it failed to properly train its officers in investigating a crime.  Other than a conclusory allegation in the Complaint that the St. Clair Shores Police Department failed to train its officers in investigating a crime and to ensure proper evidentiary support prior to filing a complaint, Young has not alleged any fact, nor submitted any evidence that the municipality failed to train its officers.  Any amendment to the Complaint adding a suable municipality would be futile.

## C.    Qualified Immunity

### 1.    Standard

Defendants seek dismissal arguing that Rice is entitled to qualified immunity on the § 1983 claims.  Young argues that Rice is not entitled to qualified immunity in that his actions were unreasonable in light of the clearly established law.

Qualified immunity is an affirmative defense that shields government officials "from liability for civil damages insofar as their conduct does not clearly establish statutory or constitutional rights of which a reasonable person would have known."  *Estate of Carter v. Detroit,* 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)).  In analyzing a qualified immunity case, courts must interpret the evidence in light most favorable to the party asserting the injury.  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001). The court must look to two factors: 1) whether the action violated a constitutional right; and 2) whether that constitutional right was clearly established such that a reasonable officer would understand that what he was doing would violate that right.  *Ciminillo v. Streicher,* 434 F.3d 461, 466 (6th Cir. 2006). The court has the discretion to conduct this analysis in any order. *Eldridge v. City of Warren,* 533 Fed. Appx. 529, 532 (6th Cir. 2013).  The "clearly established" inquiry, "must be undertaken *in light of the specific context of the case*, not as a broad general

proposition ..." *Saucier,* 533 U.S. at 201 (emphasis added). The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202. If the constitutional right was not clearly established, the motion for qualified immunity should be granted. If a defendant challenges the plaintiff's version of the facts, an issue of fact is created, and qualified immunity must be denied. *See, Johnson v. Jones,* 515 U.S. 304 (1995). However, even if a defendant challenges the plaintiff's version of the facts, a court may grant qualified immunity if one of the parties' accounts is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris,* 550 U.S. 372, 380 (2007).

### 2. Count I, Fourth and Fourteenth Amendments Unlawful Search and Seizure

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); accord, e.g., *Beck v. Ohio*, 379 U.S. 89, 91 (1964). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. "Generally, probable cause exists when the police have 'reasonably trustworthy information ...

sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (alteration in original) (quoting *Beck*, 379 U.S. at 91). An officer is required to "consider the totality of the circumstances," and cannot look only at the evidence of guilt while ignoring all exculpatory evidence when assessing probable cause. *Id*. at 318. "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Id*. at 315 (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

A right is clearly established for purposes of overcoming the qualified immunity defense when existing precedent has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). An officer cannot be said to have violated a plaintiff's clearly established right to be free from arrest unsupported by probable cause "unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it." *Kisela v. Hughes*, 584 U.S. 100, 105 (2018).  At the time of Rice's conduct, it was "clearly established that arrest without probable cause violates the Fourth Amendment." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007).  The next question then is based on the totality of the circumstances whether in Rice's perspective there existed probable cause to

arrest Young.

When Rice, who was patrolling the area, came upon Young, he had already stopped on Ten Mile Road, in a through lane.  Young was not on the side of the road as he asserts in his response brief, but on the road itself in the lane of travel. Rice told Young that he cannot park or stop on a main road and that Young was in a lane of travel.  Rice asked for Young's documents and then ran the LEIN which came back that Young had prior driving while under the influence arrests.  Rice, returning to Young's vehicle, could smell alcohol in the vehicle.  He asked Young if he had been drinking.  Young indicated that he had been drinking the night before, but had stopped at around 2:00 a.m.  Rice then asked Young to step out of the car.  Rice saw a red cup in the car and asked Young what was in the cup who responded that it was water.  Rice administered field sobriety tests, including reciting the alphabet and counting backwards.  He recited the alphabet accurately but had a difficulty counting backwards.  Rice noticed Young's eyes to be bloodshot and watery.  Rice conducted a nystagmus test, which showed equal tracking in both eyes and no resting nystagmus.  Rice noticed that both eyes displayed lack of smooth pursuit, onset prior to 45 degrees, and nystagmus at maximum deviation.  Young was not given the one-legged stand or walk/run test. Young initially refused to take the Breathalyzer test, then agreed to take the test.

The test revealed a blood alcohol content of 0.186 percent, more than twice the legal limit.   Young was then arrested for Operating While Intoxicated (Third Offense), handcuffed and placed in the patrol car.   After a subsequent search, it was determined that the red cup contained alcohol.

Based on the totality of the circumstances, in Rice's perspective, given that Young was stopped on a through lane of 10 Mile Road, and as a result of the smell of alcohol, the field sobriety and Breathalyzer tests, Rice had probable cause to arrest Young for Operating While Intoxicated.   As previously noted by the Sixth Circuit, "a Breathalyzer ... yields a single, objective reading that every reasonable officer should be able to ascertain."   *Akima v. Peca*, 85 F.4th 416, 428 (6th Cir. 2023).

The issue then is whether the MSP's concerns regarding calibration of the Breathalyzer machines, and eventual removal of such, creates a genuine issue of material fact as to whether Rice's arrest of Young was based on probable cause. Defendants submitted evidence that on January 10, 2020, MSP notified police and prosecutors of performance-related issues relating to the Breathalyzers.  Evidence submitted shows that on January 13, 2020, MSP removed all Breathalyzers in Michigan from service until they could be inspected and verified to ensure proper calibration.   MSP recommended that police agencies utilize blood draws rather

than breath tests to establish evidence of drunk driving until the machines were properly calibrated. Young did not submit any evidence to show that Rice, or any other officer in that jurisdiction, had notice, prior to January 10, 2020, that there were any issues with the breathalyzers. Young was arrested on August 31, 2019. In addition to the Breathalyzer test, exculpatory evidence showed that a reasonable officer could have found probable cause to arrest Young for possible Operating While Under the Influence, in light of Young being stopped on a lane of travel on 10 Mile Road, not the side or shoulder of the road, that Rice smelled alcohol, that Young admitted to drinking until 2:00 a.m. earlier in the morning, that Young had difficulty with some of the sobriety tests, and that Rice noticed Young's bloodshot and watery eyes. Young's explanation that he stopped to use his phone to google places to fish and that he had allergies, are plausible reasons. However, the court must assess Rice's probable-cause determination based on the information Rice had at the time of the arrest, not what he would subsequently come to find out. *United States v. Wright*, 16 F.3d 1429, 1438 (6th Cir. 1994) ("[o]ften, innocent behavior will form the grounds for probable cause"). When viewing the totality of circumstances, Rice had a reasonable belief that his arrest of Young was lawful. Rice is entitled to qualified immunity, and Count I is dismissed.

> **3.   Count III, Equal Protection Rights Violation**

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Props. v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1111 (6th Cir.1995). To state a claim for selective prosecution/enforcement, a plaintiff must establish three elements. *Stemler v. City of Florence*, 126 F.3d 856, 873 (6th Cir. 1997). First, the state actor must single out a person belonging to an identifiable group for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. *Id*. Second, he must initiate prosecution with a discriminatory purpose. *Id*. Third, the prosecution must have a discriminatory effect on the group to which the individual belongs. *Id*. There is a "strong presumption that state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Id*.  As to the first element, "it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside [his] category were not prosecuted." *Stemler*, 126 F.3d at 873; *Cunningham v. Sisk*, 2003 WL 23471541, *9 (E.D. Tenn. Dec. 4, 2003) (plaintiff was required to show that similarly situated persons outside his race were not arrested, searched, and/or given traffic citations for speeding under comparable circumstances).

Young has not shown that as to the first element, non-Black drivers were not prosecuted for stopping in a travel lane and suspicion of Driving While Intoxicated.   As to the second and third elements, to show a discriminatory purpose, a plaintiff can proffer evidence that an official chose to prosecute or engage in some action in part because of its adverse effect on an identifiable group. *King v. City of Eastpointe*, 86 F. App'x 709, 802 (6th Cir. 2003).   Young has not submitted any evidence that Rice arrested anyone because it adversely affected Blacks.   Young only alleges that the reason he was arrested was because he was Black.   Young's citation of certain statistics in his brief does not establish racial profiling in the City of St. Clair Shores.   A copy of the source of the statistics was not submitted by Young.   In any event, the statistics cited in Young's response brief involve "St. Clair **County,**" which is a different municipal entity from the subject entity in this case, the **City of St. Clair Shores**, which is in Macomb County, not St. Clair County.   (ECF No. 23, PageID.302) Rice is entitled to qualified immunity as to the equal protection violation claim and Count III must be dismissed.

    **D.**    **State Law Tort Claims**

        **1.**    **Count IV, Negligent Infliction of Emotional Distress**

Claims for negligent infliction of emotional distress under Michigan law

"are limited to 'bystander recovery,'"—i.e., cases in which the plaintiff witnessed an injury to a third party. *Wargelin v. Sisters of Mercy Health Corp.*, 149 Mich. App. 75, 385 N.W.2d 732, 734–35 (1986); *Courser v. Allard*, 969 F.3d 604, 621 n. 5 (6th Cir. 2020). Nothing in the Complaint, nor any evidence obtained through discovery, shows that Young witnessed an injury to a third party. Count IV must be dismissed.

### 2.      Count V, Intentional Infliction of Emotional Distress

#### a.      St. Clair Shores Police Department

The Michigan Supreme Court explained that as to police departments "[i]t cannot be true that such an agency can be officially liable to suits for liabilities, where it has no legal means of raising funds for payment." *O'Leary v. Bd. of Fire & Water Comm'rs of Marquette*, 79 Mich. 281, 44 N.W. 608, 610 (Mich. 1890). "[T]he police department is not liable in a tort action directed solely against such department ...." *Id*. Michigan's governmental immunity statute, M.C.L. § 691.1401 et seq., immunizes municipal police departments from suit. *Aslani v. Sparrow Health Sys*., Case No. 1:08-CV-298, 2009 WL 736654, at *14 (W.D. Mich. Mar. 12, 2009).

Because the St. Clair Shores Police Department cannot be sued and is immune from suit under Michigan's governmental immunity statute, Count V must

be dismissed as to the Department.

### b.      Defendant Rice

Michigan's Government Tort Liability Act shields government employees with immunity unless the employee's conduct rises to the level of "gross negligence" or their conduct constitutes an "intentional tort." M.C.L. § 691.1401 *et seq.*; *Odom v. Wayne Cty.*, 482 Mich. 459, 760 N.W.2d 217, 228 (2008) (reaffirming the test in *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984), as good law even after the passage of the Governmental Tort Liability Act). Like its federal counterpart, governmental immunity is an affirmative defense. For intentional torts, the defendants carry the burden to raise and establish governmental immunity by showing that: "(1) [T]he employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial in nature." *Odom*, 760 N.W.2d at 218. A governmental employee fails the "good faith" standard under the second prong when they act maliciously, recklessly, capriciously, or willfully and corruptly. *See id.* at 224–25; *Peterson v. Heymes*, 931 F.3d 546, 557 (6th Cir. 2019).

To the extent Michigan recognizes a claim for intentional infliction of

emotional distress, the tort requires evidence of (1) "extreme and outrageous conduct," (2) "intent or recklessness," (3) causation, and (4) "severe emotional distress." *Lucas v. Awaad*, 299 Mich. App. 345, 830 N.W.2d 141, 150 (2013) (quoting *Dalley v. Dykema Gossett PLLC*, 287 Mich. App. 296, 788 N.W.2d 679, 694 (2010)). The defendant's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (quoting *Doe v. Mills*, 212 Mich. App. 73, 536 N.W.2d 824, 833 (1995)); *Susselman v. Washtenaw Cnty. Sheriff's Off.*, 109 F.4th 864, 873 (6th Cir. 2024).

In this case, Rice has shown that the arrest of Young was undertaken during the course of his employment as a police officer.  Rice was acting within the scope of his authority to investigate why Young was stopped in a travel lane on 10 Mile Road.  It appears that his action was undertaken in good faith, and that the investigation and eventual arrest of Young were discretionary acts.  Young has not provided any evidence that Rice acted maliciously, recklessly, capriciously, or willfully and corruptly during the investigation or arrest of Young. He has not provided any evidence showing that Rice's actions were extreme and outrageous. Based on a review of the evidence submitted, Rice has shown he is entitled to governmental immunity on Young's state law claim of intentional infliction of

emotional distress.  Count V must be dismissed.

## III.    CONCLUSION/ORDER

Based on the above,

IT IS ORDERED that Defendants' Motion for Summary Judgment **(ECF No. 21**) is GRANTED.

IT IS FURETHER ORDERED that this action is DISMISSED and designated as CLOSED on the docket.

s/Denise Page Hood
DENISE PAGE HOOD
United States District Judge

DATED:  November 6, 2024